Filed 5/13/14  In re L.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.C., et al, Persons Coming Under the Juvenile Court Law. | H040214 (Santa Clara County Super. Ct. Nos. JD21847 JD21848) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. J.P., Defendant and Appellant. | |

Following a contested jurisdiction and disposition hearing, the juvenile court determined that L.C. and A.P. (minors) were described by Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect),[1] and adjudged them dependent children of the court.  Minors' father, J.P., appeals from the juvenile court's August 16, 2013 dispositional orders.  (§ 395.)  The juvenile court also

---

[1]     All further statutory references are to Welfare and Institutions Code unless otherwise specified.

1

adjudged mother's three older children by another father, Andrea T., F.T, and Angel T., dependent children of the court, but those cases are not before us in this appeal.

Father challenges the sufficiency of the evidence to support several of the court's jurisdictional findings, the sufficiency of the evidence to support the court's assumption of jurisdiction under subdivision (a) of section 300, the lack of evidence to show that his past criminal history placed minors at risk in the present, and the court's dispositional order requiring him to complete a certified 52-week batterer's intervention program.

We affirm.

I

*Procedural History*

On May 3, 2013, the Santa Clara County Department of Family and Children's Services (Department) filed juvenile dependency petitions on behalf of L.C. and A.P. Amended petitions were subsequently filed.

The Jurisdiction/Disposition and addendum reports disclosed the following. Mother and father were not married. A family court order, filed August 9, 2012, awarded sole legal and physical custody of minors to mother. The order granted father twice-a-month, weekend visitation with minors and required exchanges of the children before and after visits to take place at a San Jose police station. A domestic violence restraining order, expiring in late June 2014, protected mother from father.

The juvenile court held a contested jurisdiction and disposition hearing. In addition to witness testimony, the court admitted into evidence the Jurisdiction/Disposition Report and the August 16, 2013 addendum report. Following the hearing, the juvenile court found true the allegations of third amended petitions as amended on the record.

With respect to jurisdiction over minors pursuant to section 300, subdivision (a) (serious physical harm) and section 300, subdivision (b) (failure to protect), the juvenile

2

court found the following allegations true. On May 3, 2013 or May 4, 2013, mother's five children ranging in ages three to 12 years, including L.C., age five, and A.P., age three, were placed into protective custody because the children were "at significant risk of harm in the care of their mother, [O.C.], due to physical abuse, general neglect and exposure to domestic violence" between mother and minors' father. During a weekend visit, father struck A.P. in the face and, as a result, A.P. experienced pain and a blackened eye. L.P. reported witnessing father strike A.P. at the park.

The juvenile court additionally found true the following allegations with respect to jurisdiction over minors pursuant to section 300, subdivision (b). Mother had a restraining order protecting her from father but she continued to allow him to spend the night in the family's residence and her actions placed the children at risk of harm in her care. Father "perpetuated acts of domestic violence against the mother in the presence of the children on multiple occasions, including yelling at her, grabbing her by the wrists and arms, kicking her, and pushing her." "[M]other's choice to expose the children to her conflictual relationship with [father] places the children at risk of harm in her care." Father had an extensive criminal record for the period between February 7, 1979 to October 4, 2012 that included, but was not limited to, "multiple convictions for possession of a controlled substance, possession of controlled substance for sale, possession of concentrated cannabis, possession of a controlled substance without a prescription, inflict [*sic*] corporal injury to spouse/cohabitant, violate [*sic*] order to prevent domestic violence, assault, drunk driving on the highway, hit and run: property damage, reckless driving with a suspended license, receive [*sic*] known stolen property, driving without a license, vandalism, and violation of parole." Father was a registered narcotics offender until 2010 and he was on probation until 2015. Mother has a criminal history that includes "a conviction for battery in 2003," during which "she placed her child at risk of harm when she engaged in a physical altercation."

3

On the record, the juvenile court stated that father has "a very long criminal record" and found "of particular note" his eight convictions related to domestic violence. Those convictions included violation of Penal Code sections 243, subdivision (e) (battery) and 273.5 (willful infliction of corporal injury), and multiple violations of Penal Code section 273.6 (violation of restraining order). The court stated that father has "a very serious history of domestic violence" and "continues to demonstrate behaviors consistent with a batterer and he too is in need of significant intervention by the Court to ensure the safety of the children."

The court concluded "domestic violence is a significant risk issue for the children as is physical abuse at the hands of both parents." He believed mother had "greatly minimized the domestic violence that she has experienced and that the children have been exposed to." The court expressly rejected her testimony that she had not been a domestic violence victim and indicated that it was clear from the evidence that she was "in great need of supportive services to better recognize . . . how to protect herself and the children."

Father submitted the dispositional determination based on Department's recommendation that he receive family reunification services but he opposed the recommendation that he complete a certified 52-week batterer's intervention program. Father believed that a domestic violence assessment was more appropriate than the program. Father's counsel acknowledged father's criminal history of domestic violence. Counsel argued that father's most recent domestic violence conviction was in 2010 and father had "served his time and paid his debt." Counsel represented that father denied there had been "any recent issue of domestic violence." Counsel contended that the Department had not shown there was "a current need for him to complete that class in order to safely reunify."

4

The juvenile court adjudged minors dependent children of the court. With a few changes, the court adopted the Department's dispositional recommendations. As to the 52-week batterer's intervention program, the court found "the evidence more than amply supports that recommendation . . . ." The court stated that it had "received evidence and made findings there's been ongoing domestic violence since the date of the last conviction in 2010."

## II

### *Discussion*

A. *Jurisdiction*

1. *Governing Dependency Law*

A child is within the jurisdiction of the juvenile court under subdivision (a) of section 300 when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).) "[A] court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm." (*Ibid.*) This "permissive language" "merely sets forth scenarios in which the statute may apply." (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 725.)

For purposes of subdivision (a) of section 300, " 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury." (§ 300, subd. (a).) "[P]arents of common intelligence can discern what injuries fall within" the scope of that subdivision. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.)

A child is within the jurisdiction of the juvenile court under subdivision (b) of section 300 when "[t]he child has suffered, or there is a substantial risk that the child will

suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."  (§ 300, subd. (b).) "The child shall continue to be a dependent child pursuant to [subdivision (b) of section 300] only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."  (§ 300, subd. (b).)

As the California Supreme Court has observed, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  Subdivisions (a) and (b) of section 300 also encompass circumstances creating a "substantial risk" of specified harm.  " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]"  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; see § 300.2 [the purpose of dependency law].)

2.  *Sufficiency of the Evidence*

a.  *Standard of Review*

Well established principles guide our review of the sufficiency of the evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 . . . .)  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.  [Citations.]  ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is

6

appropriate]." ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321 . . . .)' (See also *In re Angelia P.* (1981) 28 Cal.3d 908, 924 . . . .)" (*In re I.J., supra,* 56 Cal.4th at p. 773.)

b. *True Findings*

Father challenges the court's true findings as to three allegations. Two allegations were identical and concerned the reason minors and their half-siblings were taken into protective custody (a-1, b-1). The third allegation concerned father's domestic violence against mother and the children's exposure to it (b-4). Father asserts that "[t]he evidence was insufficient to show any recent issue of domestic violence" against mother by him. Father does not dispute the sufficiency of the evidence to show that he struck A.P. in the face and gave her "a blackened eye" and L.C. witnessed his act. (a-2; b-2).

Father does not deny past domestic violence against mother but he maintains that he was not "the perpetrator of domestic violence in this case." He "contests any true finding that he was domestically violent in this case or that he places his children at risk of physical harm because of any current domestic violence." Father points out the mother denied any recent domestic violence.

The Jurisdiction/Disposition Report provided evidence of recent domestic violence. On April 24, 2013, Angel T., then 10 years old, told a social worker that the last time he saw father hurt mother was about a month earlier. Father and mother began arguing and father pushed mother, who fell back onto the bed. Father held mother's wrists tightly and mother was crying. Angel T. recalled other past incidents of domestic violence. On one occasion father kicked mother in the knee and she began to cry; mother had a bruise on her leg. Angel T. had witnessed father twisting mother's arm; mother had asked father "to please not break her arm."

The Jurisdiction/Disposition Report referred to a police report, dated August 20, 2010, indicating that police had responded to a report of domestic violence. Mother

7

reported to an officer that, during an argument with father, he had pushed her, he had punched her in the head several times, he had choked her with one hand and then pushed her to the floor, and he had grabbed her left arm and tried to break it by twisting it. Both L.C. and A.P. were present during the physical altercation. According to the Jurisdiction/Disposition Report, the police report mentioned two prior incidents of domestic violence between mother and father, one in which father was the perpetrator and another in which mother was the perpetrator.

The Jurisdiction/Disposition report discussed the prior child welfare history, which included over 30 referrals. One of those referrals, dated March 20, 2011, arose from an incident that occurred when mother and father met at a gas station to exchange the children. Father asked mother for gas money. When mother did not give him money, "he punched her in the ear while she was holding their daughter." Mother told the emergency response social worker that father "constantly uses tactics of control or intimidation on her." Father denied hitting mother and the children did not make any disclosures. The referral was closed as inconclusive.

An addendum report, dated August 16, 2013, indicated that mother reported to a social worker on May 6, 2013 that the most recent incident of domestic violence between father and her had occurred within the past month. Mother acknowledged that father had grabbed her arm and pushed her but she explained father needed to intervene because she had slapped Angel T. for "disrespecting her." The social worker separately spoke with Andrea T., F.T. and Angel T. and they each mentioned the same incident in which father had grabbed mother by the arm and pushed her down on the bed.

Kate Burbach testified at the jurisdiction and disposition hearing. She was the investigating social worker. She had prepared the dependency petitions and written the reports submitted by the Department. It was her assessment that ongoing domestic

8

violence between mother and father presented a risk to the children. She related three separate incidents of domestic violence between mother and father.

The first was the August 2010 incident that led to a conviction of domestic violence. During that incident, father hit mother several times and tried to strangle her. The second incident occurred in 2011 when mother and father were exchanging minors. Father hit mother on the head while she was holding her daughter because mother would not give him gas money.

The most recent incident of domestic violence occurred in April 2013. Mother had told Burbach that "Angel was being disrespectful and so she went to smack him in the face. . . ." Mother reported that father was angry at mother and grabbed her arms and pulled her away and down onto the bed. The social worker described father's response as "excessive." The social worker stated that mother's description of the incident at the hearing was different than the description mother had previously given to her when interviewed.

The social worker's concern about domestic violence between mother and father was also based upon the verbal attacks and intimidation tactics used by father. L.C. had stated his parents were always fighting. Andrea T. stated father could become aggressive. Mother had indicated that father was leaving harassing voice mails and calling her crude or crass names. All the children had made statements indicating that mother and father fight, there was aggression, and father was mean.

The evidence was sufficient to support a true finding with respect to the b-4 allegation that father had engaged in acts of domestic violence against mother in the presence of her children on multiple occasions. The court impliedly rejected, as lacking in credibility, mother's contrary testimony.

"The fact that it is possible to draw some inference other than that drawn by the trier of fact is of no consequence. [Citation.]" (*Jessup Farms v. Baldwin* (1983) 33

9

Cal.3d 639, 660.)  " ' "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.  [Citations.]  Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 519.)  In assessing the sufficiency of the evidence, reviewing courts "have no power to judge the effect, value or weight of the evidence, consider the credibility of witnesses or resolve conflicts in the evidence.  [Citation]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1162.)

The other two allegations (a-1 and b-1) described the reason mother's five children, including minors, were taken into protective custody in May 2013.  The children were placed in protective custody because the Department concluded they were "at significant risk of harm in the care of their mother, [O.C.] due to physical abuse, general neglect and exposure to domestic violence" between mother and father. Following a referral, both minors disclosed to the emergency response social worker that father hit three-year-old A.P. because she was not listening.  In her investigation, the social worker discovered numerous prior referrals and a history of domestic violence. The report specified over 30 referrals.  "[T]he risk of harm to the children was determined to be high as the children disclosed that the mother allows the father, [J.P.], to spend the night contrary to a current restraining order, the children have witnessed [father] perpetrate acts of domestic violence on their mother," and the children disclosed that father had physically abused A.P.  The emergency social worker unsuccessfully attempted to engage the family in informal services but mother did not agree that father

10

should not have unsupervised visitation with minors.  The court's true findings as to those allegations were supported by substantial evidence.

c. *Determination of Jurisdiction Under Subdivision (a) of Section 300*

Father argues that "his conduct did not fall within the statutory definition of section 300, subdivision (a)."  Father points to evidence in the dependency record indicating that, after the incident, he made statements that A.P.'s injury was accidental.  Father did not testify at the jurisdiction and disposition hearing.

The Jurisdiction/Disposition Report indicated that the emergency response social worker separately interviewed mother, L.C., and A.P.   Mother reported that, after minors returned home after spending the weekend with father, she noticed a bruise under A.P.'s eye and a scratch on her check.  When mother asked what happened, both A.P. and L.C. indicated that father hit A.P.  L.C. told the social worker that A.P. "was running around and would not listen" and father hit her in the eye.  He demonstrated using a closed fist and said A.P. fell down.  A.P. told the social worker that father hit her in the face and she demonstrated with a fist.  The social worker observed a purple bruise under her eye.

Thus, the evidence is sufficient to show that father struck three-year-old A.P. in the face hard enough to give her a black eye and did so "nonaccidently" (§ 300, subd. (a)).  The court impliedly rejected father's explanations of A.P.'s injury and we cannot reweigh the evidence.  A.P.'s injury qualifies as "serious physical harm."  (Cf. *In re Mariah T.*, *supra*, 159 Cal.App.4th at p. 438.)  This is an injury that any parent of common intelligence would recognize as serious physical harm.  (See *ibid*.)  It went beyond the "reasonable and age-appropriate spanking to the buttocks" not resulting in serious physical harm excluded from the scope of the subdivision.  (§ 300, subd. (a).)  Father is essentially asking us to reweigh the evidence, which is beyond our authority.

Further, the evidence showing that three-year-old A.P. had suffered "serious physical harm" inflicted nonaccidentally by father also supported the determination that

11

there was "a substantial risk" that both she and her five-year-old brother, L.C., will suffer "serious physical harm inflicted nonaccidentally" by father. (§ 300, subd. (a).)

This case may be distinguished *In re Daisy H.* (2011) 192 Cal.App.4th 713, which found that the evidence was insufficient to support the determination of jurisdiction under section 300, subdivisions (a) and (b). (*Id.* at pp. 716-717.) In that case, "[t]here was no evidence that Father ever intentionally harmed any of his children or that the children were at risk of intentional harm." (*Id.* at p. 716.)

d. *Determination of Jurisdiction Under Subdivision (b) of Section 300*

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Father does not appear to be challenging the sufficiency of the evidence, considered as whole, to support the juvenile court's determination of jurisdiction under section 300, subdivision (b).

Rather, father asserts that his criminal history, especially his convictions related to substance abuse and his convictions unrelated to domestic violence, did not put minors at a current risk for physical harm.[2] Although he "does not contest his past," he maintains

---

[2]    A juvenile dependency petition must contain a "concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." (§ 332, subd. (f).) Insofar as father is attempting to attack the petition's allegation concerning his criminal history, he has forfeited the challenge by failing to raise it below. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [dependency matters are not exempt from forfeiture rule].)

there was no evidence connecting his criminal record, especially his convictions related to controlled substances, to a current risk to minors.

We would agree that the factual allegations regarding father's criminal history unrelated to domestic violence, which were found true by the court, were not shown, through further factual allegations, to put minors at substantial risk of suffering "serious physical harm or illness" as a result of a parental failure or inability to adequately supervise or protect them. (§ 300, subd. (b).) Nothing in the record demonstrates, however, that the court relied upon father's criminal history unrelated to domestic violence to draw the conclusion that minors were at a risk of harm.[3] Moreover, the evidence of father's criminal history related to domestic violence was relevant to the court's assessment of that risk and its determination of jurisdiction under subdivision (b) of section 300.

"Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.) Domestic violence between parents puts children "in a position of physical danger" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . ." (*Ibid.*, fn. omitted;

---

[3]    The allegation and evidence of father's criminal history unrelated to domestic violence, such as past convictions related to drug use, was background information. While the social worker reported that father "struggles with substance abuse" and his "use of substances is a contributing factor that places his children at risk of harm in his care," the Department did not move to amend the petition to conform to proof of father's current drug problems. The record does not reflect that the court was relying on father's current substance abuse in making its finding of jurisdiction under subdivision (b) of section 300.

13

see *In re R.C., supra,* 210 Cal.App.4th at pp. 941-942; *In re E.B.* (2010) 184 Cal.App.4th 568, 576.)

"Physical violence between a child's parents may support the exercise of jurisdiction under subdivision (b) [of section 300] but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm. (*In re Janet T.* (2001) 93 Cal.App.4th 377, 391 . . . ; *In re Heather A.* (1997) 52 Cal.App.4th 183, 194-195 . . . .)" (*In re Daisy H., supra,* 192 Cal.App.4th at p. 717.) Here, the evidence supported a reasonable inference that there was ongoing domestic violence between mother and father. There was evidence, impliedly believed by the court, that a recent incident of domestic violence between them took place in about April 2013, not long before father hit A.P., and apparently in the presence of at least three of mother's children. Thus, this case is unlike *Daisy H.*, *supra*, 192 Cal.App.4th 713, where "[t]here was no evidence that any of the children were physically exposed to the past violence between their parents and no evidence of any ongoing violence between the parents who [were] separated. [Citation.]" (*Id*. at p. 717.)

The evidence of past and recent domestic violence between mother and father and the evidence that father struck A.P. in the face supported a reasonable inference that familial physical violence perpetrated by father was not entirely in the remote past as father now claims and the risk of such conduct continued. Even though the court found the allegations regarding father's extensive criminal history (b-5) were true, the court focused on father's history of domestic violence. The evidence taken as a whole, including the evidence of past domestic violence, the evidence that father recently engaged in domestic violence against mother and he struck A.P. in the face hard enough to cause "a blackened eye," and the evidence supporting the allegations against mother, was sufficient to support a finding that there was "a substantial risk" that minors would

14

suffer "serious physical harm" in the future due to parental failure or inability to adequately supervise or protect minors.

B. *52-Week Batterer's Intervention Program*

Father argues that the court acted prematurely by requiring father to complete a 52-week Batterer's Intervention Program without first ordering a domestic violence assessment by an expert. He complains that the length of the program will make it "difficult if not impossible to reunify" within the reunification period. Father has not pointed to any requirement that the program be completed before reunification.

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . subject to further order of the court." (§ 362, subd. (a).) "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . ." (§ 362, subd. (d).) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (*Ibid*.)

"At the dispositional hearing, the juvenile court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. (§ 361.5, subd. (a); Cal.Rules of Court, [former] rule 1456(f)(1).) The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104 . . . ; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1005 . . . .)" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006; see Cal. Rules of Court, rule 5.695(h).) An appellate court cannot reverse the court's dispositional order absent a clear abuse of discretion. (*In re Christopher H., supra,* 50 Cal.App.4th at p. 1006.) " 'The

15

appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Social Worker Burbach recommended that father participate in a 52-week certified batterer's intervention program. Her reason for the recommendation was that, in speaking with father, it had become apparent to her that father "struggles to stabilize his mood," "he acts out explosively, verbally especially," "has problems with authority," and "he uses tactics of intimidation." Father had admitted to the social worker that mother and he "get in arguments often." In her opinion, father had some impulse control issues that affect his day-to-day behaviors and he is "easily angered."

The evidence of past and recent domestic violence by father against mother and his act of striking his young daughter in the face supported the court's order requiring father to successfully complete a certified 52-week batterer's intervention program. Father has failed to show this requirement was outside the bounds of reason.

## DISPOSITION

The August 16, 2013 dispositional orders are affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

17